UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 16-51072-PMB |
| WILLIAM B. JOHNSON, JR., ) | |
| ) | |
| Debtor ) | CHAPTER 7 |
| ) | |
| ) | |
| NEIL C. GORDON, Chapter 7 Trustee ) | |
| for the Estate of William B. Johnson, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ADVERSARY PROCEEDING |
| THE INTERNAL REVENUE SERVICE; ) | NO. 16-05349 |
| GEORGIA DEPARTMENT OF ) | |
| REVENUE; U. S. DEPARTMENT OF ) | |
| JUSTICE; AUTOMOBILE ) | |
| ACCEPTANCE CORP.; DANCO ) | |
| FINANCIAL INC.; SYNOVUS BANK; ) | |
| J. RICHARD STEPHENS; SUNTRUST ) | |
| BANK; AMEGY BANK, N. A.; STATE ) | |
| BANK; CHATHAM HILL ) | |
| ASSOCIATION, INC.; and SANDRA ) | |
| THOME JOHNSON, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Neil C. Gordon, Chapter 7 Trustee for the Estate of William B. Johnson, Jr. (the "Trustee" or "Plaintiff"), by and through undersigned counsel, and files this *Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment*.

11638032v1                                           1

I. Statement of Facts

The claims asserted in this adversary proceeding arise in and relate to the Chapter 7 bankruptcy case of William B. Johnson, Jr. ("Mr. Johnson" or the "Debtor"), Case No. 16-51072-PMB (the "Case") pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

Debtor filed his petition constituting an order for relief under Title 11 of the United States Code on January 19, 2016, initiating the Case. Trustee was appointed to the Case as the interim Chapter 7 Trustee on January 20, 2016 pursuant to 11 U.S.C. § 701(a)(1). On February 22, 2016, at the conclusion of the meeting of creditors conducted pursuant to 11 U.S.C. § 341(a), Trustee became the permanent Chapter 7 Trustee, pursuant to 11 U.S.C. § 702(d).

Debtor and his spouse, Ms. Johnson, jointly owned that certain real property condominium known generally as #3, 3000 Andrews Drive, Atlanta, Fulton County, Georgia 30305 (the "Property").

Almost five years prior to the Petition Date, Debtor transferred his undivided one-half interest in the Property to Ms. Johnson, pursuant to the *Limited Warranty Deed* (the "Deed") dated April 7, 2011 and recorded April 11, 2011 on the real property records with the Clerk of Superior Court, Fulton County, Georgia (the "Transfer"). The Transfer was for "love and affection." Debtor received no monetary consideration for the Transfer and no transfer tax was paid.

On November 6, 2015, the Superior Court of Fulton County, Georgia entered an *Order and Judgment* in the case of *J. Richard Stephens v. William B. Johnson, Jr. and Sandra T. Johnson*, Civil Action File No. 2014CV245803, ordering and decreeing that the Deed is null and void and that it was null and void *ab initio*, pursuant to O.C.G.A. §§ 18-2-70, *et seq.* and O.C.G.A. § 44-5-88. The Order and Judgment is referred to herein as the "2015 State Court Judgment."

Pursuant to the *Order* [Doc. No. 59], entered by the Court on April 8, 2016, granting Trustee's *Motion for Order Approving Settlement Agreement* [Doc. No. 46], approving the settlement agreement between Trustee and Ms. Johnson, Ms. Johnson waived the requirements under 11 U.S.C. § 363(h), and consented to Trustee's sale of the Property by motion under 11 U.S.C. §§ 363(b) and (f).

Trustee obtained a full title examination report on the Property dated March 22, 2016 and effective February 29, 2016 (the "Title Report"). The Title Report reflects no security deeds against the Property but millions of dollars in federal and state tax liens and judgment liens.

Trustee entered into a *Purchase and Sale Agreement* for sale of the Property to William P. Eager and Elizabeth G. Eager, "as is, where is," for the total sale price of $1,181,000.00, subject to Bankruptcy Court approval (the "Contract").

On May 17, 2016, Trustee filed pursuant to 11 U.S.C. § 363(b) and (f) a *Motion for Authority to (A) Sell Property of the Estate Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) Disburse Certain Proceeds at Closing* [Doc. No. 32] (the "Sale Motion").

None of the Defendants opposed or otherwise responded to the Sale Motion or the Sale Order (defined below), except that Synovus Bank filed a Response [Doc. No. 43] which indicated that Synovus Bank did not object to the proposed sale.

On June 16, 2016, the Court entered an *Order* [Doc. No. 46], granting the Sale Motion and approving the Contract and authorizing the sale of the Property (the "Sale Order").

On June 23, 2016, Trustee closed on the sale of the Property. Trustee's closing attorney and authorized disbursing agent made those disbursements authorized by the Sale Order. As a result of Plaintiff's sale of the Property, the bankruptcy estate held net sale proceeds in the approximate amount of $1,100,687.34 ("Original Net Sale Proceeds").

On August 3, 2017, the Court entered an Order (the "Disbursement Order" [Doc. No. 57]) on the *Motion to Disburse Funds* filed by Ms. Johnson on April 28, 2017 (Doc. No. 41). In the Disbursement Order, the Court authorized and directed the Trustee to disburse the sum of $550,343.67 (one-half of the Original Net Sale Proceeds – representing Ms. Johnson's interest in the Original Net Sale Proceeds) to Ms. Johnson. As required, Trustee has disbursed the sum of $550,343.67 to Ms. Johnson's counsel.

Following the disbursement to Ms. Johnson, the bankruptcy estate now holds $550,343.67 (the "Net Sale Proceeds").

Pursuant to Debtor's Sworn Schedules and as confirmed by the Title Report, there are no security deeds against the Property.

The Property appeared to be encumbered by the following interests prior to the Closing Date[1]:

(i)  a *Writ of Fieri Facias* against Debtor and two of his businesses[2] and in favor of Synovus Bank ("Synovus Bank"), dated November 23, 2011 and recorded December 1, 2011 in the amount of $6,008,349.22;

(ii)  an *Amended Writ of Fieri Facias* against Debtor and two of his businesses[2] and in favor of Synovus Bank, dated and recorded February 6, 2012 in the amount of $6,008,349.22;

(iiii)  a *Writ of Fieri Facias* against Debtor and two of his businesses[3] and in favor of J. Richard Stephens ("J.R. Stephens"), dated and recorded February 21, 2012 in the amount of $4,600,000.00; and

---

[1] The Amended Complaint (Doc. No. 61) set forth the complete list of possible liens against the Property. The list that follows this footnote lists only those liens that remain at issue in this Adversary Proceeding.

[2] W. B. Johnson Investment Company and Monarch Flight, LLC

[3] W. B. Johnson Properties, LLC and W. B. Investment Company

    (iv) a *Federal Tax Lien* against Debtor <u>and</u> Ms. Johnson and in favor of the Internal Revenue Service (the "<u>IRS</u>"), dated September 25, 2012 and recorded October 2, 2012 in the amount of $5,099,897.04, representing tax year 2010 and assessed on January 9, 2015.

 The IRS has filed a proof of claim in the amount of $4,544,390.40 as a general unsecured claim ("<u>Claim No. 1</u>). The IRS filed no response to the Sale Motion and has not filed a motion for relief from stay in the Case.

 Synovus Bank has filed an amended proof of claim in the amount of $6,008,349.22 as a secured claim ("<u>Claim No. 3-2</u>). Synovus Bank filed a Response [Doc. No. 43] to the Sale Motion which indicated that Synovus Bank did not object to the proposed sale. Synovus Bank has not filed a motion for relief from stay in the Case.

 J.R. Stephens has filed a proof of claim in the amount of $5,670,539.89 as a secured claim to the extent of $600,000.00 and as a general unsecured claim for the remainder ("<u>Claim No. 4</u>). J.R. Stephens filed no response to the Sale Motion and has not filed a motion for relief from stay in the Case.

II. <u>Argument and Citation of Authority</u>

 Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. *Hairston v.*

*Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The party moving for summary judgment has "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553).

### A. Summary Judgment Should be Granted to Plaintiff on Count I

In Count I of his Amended Complaint, Trustee alleges that the 2015 State Court Judgment caused transfers of Debtor's interest in the Property to be made to the Defendants and that the transfers can be avoided by the Trustee as preferences under 11 U.S.C. §547.

At the time that the judgment liens obtained by Synovus Bank and by J.R. Stephens (the "Judgment Liens") and the lien of the IRS (the "Tax Lien") were recorded, Mr. Johnson did not own any interest in the Property because he had transferred his undivided one-half interest in the Property to Ms. Johnson pursuant to the Deed dated April 7, 2011 and recorded April 11, 2011. Accordingly, at the time that the Judgment Liens and the Tax Lien were recorded, the Property was solely owned by Ms. Johnson.

On November 6, 2015, when the 2015 State Court Judgment was entered, the Debtor reacquired an interest in the Property and the Judgment Liens and the Tax Lien attached to Debtor's interest or became perfected. The attachment or fixing or perfection of the Judgment Liens and of the Tax Lien on November 6, 2015 are hereinafter referred to as the "Transfers."

Trustee asserts that the following elements of a preferential transfer under 11 U.S.C. §547(b) are clear and cannot be seriously disputed: (a) the Transfers were transfers of an interest of the Debtor in the Property; (b) the Transfers were made to or for the benefit of Defendants, Synovus Bank, J.R. Stephens, and the IRS; and (c) the Transfers were made on account of antecedent debts owed by Debtor to IRS, Synovus Bank, and J.R. Stephens before the Transfers were made.

Furthermore, the Transfers were clearly made while Debtor was insolvent. There is no genuine dispute of material fact concerning the Debtor's insolvency at the time of the Transfers. As an initial matter, the Plaintiff has met his burden of proof on this required element via the presumption afforded to him by 11 U.S.C. § 547(f). The presumption of 11 U.S.C. § 547(f) is sufficient for the Plaintiff to meet his burden of establishing insolvency unless Defendants can sufficiently rebut the presumption. *In re Intercontinental Polymers, Inc.*, 359 B.R. at 872; *Mason v. Springleaf Fin. Servs. of Ohio, Inc. (In re Benavides)*, No. 12-6002, 2012 Bankr. LEXIS 2726 (Bankr. N.D. Ohio June 14, 2012) (holding that the presumption of insolvency, when not rebutted by the defendant, sufficiently established insolvency for summary judgment). The Fifth Circuit has held that "the party seeking to rebut the presumption [of insolvency] must introduce some evidence to show that the debtor was solvent at the time of the transfer; mere speculative evidence of solvency is not enough." *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp. (In re Gasmark Ltd.)*, 158 F.3d 312 (5th Cir. 1998). Also, the Schedules filed by Debtor demonstrate his insolvency as of the Petition Date and demonstrate that there were no significant changes in his financial status within the ninety-day period prior to the Petition Date. As of the Petition Date, Debtor listed only $380,110.17 in assets (although Debtor's half-interest in the Property has now been shown to have been worth over $550,000.00) and $45,447.671.75 in liabilities. Debtor's liabilities clearly exceeded his assets at the time of the Transfers.

Moreover, there is no genuine dispute of material fact that the Transfers enabled the Defendants to receive more than the Defendants would have received if the Transfers had not been made, and if the Defendants had only been paid to the extent provided by chapter 7 of the Bankruptcy Code. This is clear because, if the Transfers had not been made, the Property would be the only asset of the Case available to be liquidated to pay all creditors. In short, not one of the Defendants would receive the full value of the Property had the transfers not been made. The Property would have been liquidated and the proceeds of such liquidation would have been divided pro rata amongst the Debtor's creditors.

Trustee submits that the only possible contest with regard to the elements of a preferential transfer relates to the issue of whether the Transfers were made within ninety (90) of the Petition Date. Trustee shows that he is entitled to summary judgment on this issue.

1. **There is No Genuine Dispute of Material Fact that the Transfers were Made on or Within Ninety (90) Days Before the Date of the Filing of the Debtor's Petition.**

Section 547(b)(4) provides that the Plaintiff may avoid any transfer of an interest of the Debtor in property made on or within 90 days before the date of the filing of the petition. The 2015 State Court Judgment accomplished two sets of transfers, only one set of which is avoidable as a preference. First, the 2015 State Court Judgment operated to re-convey to the Debtor an undivided one-half interest in the Property, which the Debtor did not have prior to the entry of the 2015 State Court Judgment. The Debtor had no interest in the Property since 2011 when the Debtor transferred his undivided one-half interest in the Property to Ms. Johnson. Second, the 2015 State Court Judgment operated to cause the Judgment Liens to attach or to become fixed or perfected on the Debtor's undivided one-half interest in the Property. The Judgment Liens had not been attached, fixed or perfected at any time prior to the entry of the 2015 State Court Judgment.

The first transfer accomplished by the 2015 State Court Judgment – i.e. the transfer resulting in the Debtor's re-acquisition of an undivided one-half interest in the Property – is not a preferential transfer because it was not a transfer of an interest of the Debtor in property. Since the Debtor's transfer of his interest in the Property in 2011, the Debtor did not own the Property, and he did not own the Property again until the transfer resulting from the 2015 State Court Judgment.

The second set of transfers accomplished by the 2015 State Court Judgment – i.e. the involuntary transfers of interests relating to the attachment, fixing or perfection of the Judgment Liens and of the Tax Lien – are preferential transfers because all of the elements of a preference are present, including the fact that the transfers occurred within 90 days of the Petition Date. The attachment, fixing or perfection of judgment liens have been held to constitute transfers subject to preference analysis since not long after the passage of the 1978 Bankruptcy Code (if not earlier). *See, e.g., In re Maytag Sales and Service, Inc.*, 23 B.R. 384 (Bankr. N.D. Ga. 1982) (holding that an involuntary disposition such as the fixing of judicial liens within the preference period will be avoidable if all other elements of a preference are present); *In re Burnham*, 12 B.R. 286 (Bankr. N.D. Ga. 1981) (holding that the Bankruptcy Code's definition of transfer is broad enough to include any judicial proceeding that fixes a lien upon property of a debtor); *In re Martin*, 87 B.R. 394 (Bankr. E.D.N.C.1988) (holding that a judgment lien in favor of a creditor on real property of a debtor constitutes a transfer to or for benefit of that creditor, for preference purposes).

The 2015 State Court Judgment declared the Debtor's 2011 transfer of his undivided one-half interest in the Property to be void. This had the effect of declaring that the Debtor's interest in the Property was property of the estate as of the Petition Date such that the Trustee was in a position to exercise his authority to sell the Debtor's interest in the Property. The voiding of the Debtor's transfer by the 2015 State Court Judgment also had the effect of fixing, attaching, or perfecting

Judgment Liens on the Debtor's share of the Property. This resulted in preferential transfers to all of the creditors holding the Judgment Liens and to the IRS as the holder of the Tax Lien.

Defendants can be anticipated to make arguments that Transfers resulting from the 2015 State Court Judgment were deemed effective prior to the 90-day period before the Petition Date because the 2015 State Court Judgment stated that the Debtor's Transfer of the Property to his wife was "*void ab initio*." However, Bankruptcy Code Section 547(e)(3) (11 U.S.C. § 547(e)(3)) provides: "For purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred."

"What constitutes a transfer and when it is complete is a matter of federal law." *Barnhill v. Johnson*, 503 U.S. 393, 397, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (citation and internal quotation marks omitted). State law generally determines the nature of property interests involved in purported transfers, but only "[i]n the absence of controlling federal law." *See id.* at 398, 112 S.Ct. 1386; *see also Local Loan Co. v. Hunt*, 292 U.S. 234, 243–45, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (declining to adhere to an Illinois state-law fiction that "an assignment of future wages creates a lien effective from the date of the assignment, which is not invalidated by the assignor's discharge in bankruptcy" and stating, "Local rules subversive [to the general purpose and policy of the bankruptcy act] cannot be accepted as controlling the action of a federal court.").

In *Matter of Jackson (Tower Credit, Inc. v. Schott)*, 850 F.3d 816 (5th Cir. 2017), the Fifth Circuit held: "But it is federal law, not state law, that determines when the transfer occurred, *Barnhill*, 503 U.S. at 397, 112 S.Ct. 1386, and § 547(e)(3) requires that a debtor acquire rights in the property in question before any transfer is made."[4]

---

[4] Trustee acknowledges that the *Jackson* case disagrees with the Eleventh Circuit's holding in the case of *In re Conner*, 733 F.2d 1560 (11th Cir. 1984) (as well as the case of *In re Riddervold*, 647 F.2d 342 (2d

In the case at bar, Debtor acquired (or re-acquired) rights in the Property on November 6, 2015 when the 2015 State Court Judgment was entered. Pursuant to § 547(e)(3), the transfers represented by the attachment, fixing or perfection of the Judgment Liens did not occur until Debtor acquired rights in the Property on November 6, 2015 – which was within the 90-day period preceding the Petition Date on January 19, 2016.

2. **The Avoidance of the Transfers (i.e. the Fixing or Perfection of the Judgment Liens and of the Tax Lien) Does Not Avoid the Transfer of the Debtor's Half Interest in the Property from Ms. Johnson Back to the Debtor.**

As set forth in the previous section of this Brief, the preferential transfers accomplished by the 2015 State Court Judgment are the Transfers that involved the fixing or perfection of the Judgment Liens and of the Tax Lien. Trustee is not seeking to avoid the 2015 State Court Judgment itself as a preference. There is nothing inconsistent about Trustee's taking this position. The 2015 State Court Judgment accomplished a transfer of the Debtor's half-interest in the Property from his wife, Ms. Johnson, back to the Debtor (who had originally transferred the half-interest to her back in 2011). This 2015 transfer of the ownership interest in the Property was not a transfer of an interest that the Debtor had in the Property. Instead, the 2015 State Court Judgment operated such that an interest held by *Ms. Johnson* was transferred to the Debtor. This transfer of the interest in the Property was not a preference. Only the Transfers involving the fixing and perfection of the Judgment Liens and of the Tax Lien are preferences.

Furthermore, the Defendants cannot be heard to say that the Trustee must accept the burdens of the 2015 State Court Judgment if the Trustee wants to accept the benefits of the 2015 State Court

---

Cir. 1981)) in the context of a garnishment of a debtor's wages. However, as noted in the *Jackson* case, "Importantly, neither *Riddervold* nor *Conner* even considered the effect of § 547(e)(3), and both predated *Barnhill*, in which the Supreme Court held that federal law governs the determination of whether and when a transfer occurred." *See also In re Freedom Grp., Inc.*, 50 F.3d 408, 412 (7th Cir. 1995) (concluding that

Judgment.  That is, the Defendants can be expected to argue that the estate would have no interest in the Property as of the Petition Date if the 2015 State Court Judgment had not been entered and that it is therefore not fair for the Trustee to challenge the Transfers that resulted from the entry of the 2015 State Court Judgment.  There are two responses to this argument.  First, the recovery and avoidance of preferential transfers is not generally perceived as "fair" by the creditor that received the transfer or got paid during the 90-day preference period.  Second, the Trustee could have avoided the 2011 transfer of the Debtor's interest in the Property to the Debtor's wife, even if the 2015 State Court Judgment had not been entered.

The IRS is a creditor in this case.  On October 2, 2012, the IRS recorded a *Federal Tax Lien* against Debtor and Ms. Johnson dated September 25, 2012 in the amount of $5,099,897.04, representing tax year 2010 and assessed on January 9, 2015.  When the IRS is an unsecured creditor as of the date of a bankruptcy petition (whether or not the IRS was a creditor at the time of a debtor's fraudulent transfer), the Trustee can avoid a transfer made within ten years prior to the petition date. *See In re Kipnis,* 555 B.R. 87 (Bankr. S.D. Fla. 2016); *In re Polichuk*, 506 B.R. 405 (Bankr. E.D. Pa. 2014); *In re Kaiser,* 525 B.R. 697, 713 (Bankr. N.D. Ill. 2014); *In re Republic Windows & Doors, LLC,* 2011 WL 5975256 (Bankr. N.D. Ill. 2011); *In re Porras*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004); *In re Greater Southeast Community Hosp. Corp. I,* 365 B.R. 293, 304 (Bankr. D. Colo. 2006); *In re Emergency Monitoring Technologies, Inc.,* 347 B.R. 17, 19 (Bankr. W.D. Pa. 2006).

Trustee would also be able to avoid the transfer of the interest in the Property because the transfer occurred within six years of the Petition Date, and the Trustee could step into the shoes of the IRS and use the six-year reach-back period of the Fair Debt Collection Procedures Act.  *See*

---

pre-*Barnhill* cases holding that a transfer occurs when a notice of garnishment is served, including *Conner*, did not survive the Supreme Court's decision in *Barnhill*).

*Gordon v. Harrison (In re Alpha Protective Services, Inc.)*, 531 B.R. 889 (Bankr. M.D.Ga. 2015) (permitting the trustee's proposed use of the Fair Debt Collection Procedures Act provisions under Section 544(b) of the Bankruptcy Code to avoid a transfer that occurred within six years of the bankruptcy petition where the IRS was a creditor);[5] *In re CVAH, Inc.*, 570 B.R. 816 (Bankr. D. Idaho 2017); *In re Kaiser,* 525 B.R. 697, 713 (Bankr. N.D. Ill. 2014); *In re Tronox, Inc.*, 503 B.R. 239, 272-75 (Bankr. S.D.N.Y. 2013); *In re Pfister,* 2012 WL 1144540 (Bankr. D.S.C. 2012); *In re Walter*, 462 B.R. 698, 704-706, 712 (Bankr. N.D. Iowa 2011); *In re Porter,* 2009 WL 902662 at *20-21 (Bankr. D.S.D. 2009) (holding that a trustee could step into the shoes of the SBA and bring claims under the FDCPA and take advantage of the six-year statute of limitations thereunder).

In short, to any extent that the Trustee's ability to avoid the Debtor's 2011 transfer of Debtor's Property interest is relevant, the Trustee would have the power to void such transfer for the benefit of creditors.

Accordingly, the Court should grant Trustee summary judgment with regard to Count I and enter a judgment avoiding the Transfers (i.e. the fixing or perfection of the Judgment Liens and of the Tax Lien on the Debtor's interest in the Property), and, pursuant to 11 U.S.C. § 551, the avoided Transfers are preserved for the benefit of the Estate (which is the relief sought in Count II).

**B. Summary Judgment Should be Granted to Plaintiff on Count III**

To the extent that the Transfers are not avoided as preferential transfers and preserved as set forth above, Trustee shows that the validity, extent and priority of the Defendants' liens and interests

---

[5] Three different adversary proceedings in the *Alpha Protective Services, Inc.* case also involved insider preference claims under the FDCPA, which permits a two-year look-back period. Those cases address the two-year reach-back period for an insider preference and not the Trustee's ability to reach back for six years or for ten years to avoid fraudulent transfers when the IRS is a petition date creditor. The latter is the issue in our case, and it shows the Trustee has a greater reach-back period when the IRS is a creditor and could have still avoided the subject transfer to Ms. Johnson even if Stephens had not done so.

in the Property have not been conclusively established and it is necessary to do so to determine the extent of each of the Defendants' interests, if any, in the Net Sale Proceeds.

Trustee submits that, prior to the 2015 State Court Judgment, the Judgment Liens were inchoate and therefore did not have priority over the federal tax lien of the IRS. *See United States v. Security Trust & Savings Bank*, 340 U.S. 47 (1950). Accordingly, to the extent that the Transfers are not avoided and preserved as set forth above, the Court should enter an Order declaring that the Tax Lien has priority over the Judgment Liens and that the Tax Lien is the senior lien on the Net Sale Proceeds held by the estate, subject to surcharge under 11 U.S.C. § 506(c) and subordination under 11 U.S.C. § 724(b).

### III. Conclusion

For the reasons set forth above, the Court should grant *Plaintiff's Motion for Partial Summary Judgment* and enter a judgment against the Defendants with regard to the Counts of the Amended Complaint referenced herein.

WHEREFORE, Plaintiff respectfully requests that the Court enter a final judgment for Plaintiff and against the Defendant:

a) avoiding the Transfers (i.e. the attachment, fixing or perfection of the Judgment Liens and of the Tax Lien) pursuant to 11 U.S.C. § 547; and

b) preserving the avoided Transfers for the benefit of the Estate, pursuant to 11 U.S.C. § 551; or

c) alternatively, declaring that the Tax Lien is the senior lien on the Net Sale Proceeds held by the estate, subject to surcharge under 11 U.S.C. § 506(c) and subordination under 11 U.S.C. § 724(b).

Respectfully submitted this 15th day of December, 2017.

                        ARNALL GOLDEN GREGORY LLP
*Attorneys for Chapter 7 Trustee*

By:*/s/ Neil C. Gordon*
    Neil C. Gordon
    Georgia Bar No. 302387
    William D. Matthews
    Georgia Bar No. 470865
    william.matthews@agg.com

171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
(404) 873-8500

# CERTIFICATE OF SERVICE

This is to certify that I, William D. Matthews, am over the age of 18 and that on December 15, 2017, I caused to be served true and correct copies of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT by electronic mail on all those persons or entities set forth below at the email addresses stated:

William A. DuPré, IV
Bill.DuPre@millermartin.com
Paul M. Alexander
Paul.Alexander@millermartin.com
Megan A. Taylor
Megan.Taylor@millermartin.com
Miller & Martin PLLC
Suite 2100
1180 West Peachtree Street, NW
Atlanta, Georgia 30309

Theodore N. Stapleton on behalf of Defendant J. Richard Stephens
tstaple@tstaple.com

Robert J. Proctor, Attorney at Law
475 Huntcliff Green
Atlanta, Georgia 30350
mail@robertjproctor.com

Archana Ravindranath
Christopher M. Whitcomb
Trial Attorney, Tax Division
U.S. Department of Justice
555 4th Street, NW Suite 6235
Washington, DC 20001
Christopher.M.Whitcomb@usdoj.gov
Archana.Ravindranath@tax.USDOJ.gov

This 15th day of December, 2017.

*/s/ William D. Matthews*
William D. Matthews
Georgia Bar No. 470865

11638032v1                                1