

**IT IS ORDERED as set forth below:**

**Date: August 10, 2018**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | CASE NO. **16-51072-PMB** |
| | : | |
| **WILLIAM B. JOHNSON, JR.,** | : | |
| | : | CHAPTER 7 |
| Debtor. | : | |
| ————————————————————— | : | |
| | : | |
| **NEIL C. GORDON, Chapter 7 Trustee** | : | |
| **for the Estate of William B. Johnson, Jr.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **16-5349** |
| **THE INTERNAL REVENUE SERVICE,** | : | |
| **GEORGIA DEPARTMENT OF REVENUE**, | : | |
| **U.S. DEPARTMENT OF JUSTICE,** | : | |
| **AUTOMOBILE ACCEPTANCE CORP**., | : | |
| **DANCO FINANCIAL INC., SYNOVUS BANK,** | : | |
| **J. RICHARD STEPHENS, SUNTRUST BANK,** | : | |
| **AMEGY BANK, N.A., STATE BANK,** | : | |
| **CHATHAM HILL ASSOCIATION, INC.,** | : | |
| **and SANDRA THOME JOHNSON,** | : | |
| | : | |
| Defendants. | : | |
| ————————————————————— | : | |

**ORDER (I) GRANTING IN PART AND DENYING IN PART
SYNOVUS BANK'S RENEWED MOTION FOR JUDGMENT
ON THE PLEADINGS, (II) DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT, (III) GRANTING UNITED
STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
(IV) GRANTING IN PARTAND DENYING IN PART DEFENDANT
J. RICHARD STEPHENS' MOTION FOR SUMMARY JUDGMENT**

The following matters are now before the Court:[1]

1) *Synovus Bank's Renewed Motion for Judgment on the Pleadings* with attached *Memorandum in Support*, filed by Synovus Bank ("Synovus") on December 12, 2017 (Docket No. 84);

2) *Plaintiff's Motion for Partial Summary Judgment*, filed by Neil C. Gordon, the duly appointed Chapter 7 Trustee in the underlying Chapter 7 case and the Plaintiff herein (the "Trustee") on December 15, 2017 (Docket No. 85) along with *Plaintiff's Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried* (Docket No. 86) and the *Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment* (Docket No. 87);

3) *The United States' Motion for Partial Summary Judgment, Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried,* and *Memorandum in Support of Motion for Partial Summary Judgment*, filed by the United States of America, by and through its

---

[1] The Court held a Status Conference on October 31, 2017 regarding several matters including the *Amended Complaint to Determine the Validity, Priority, and Extent of Liens and Interests* filed on August 28, 2017 (Docket No. 61)(the "Complaint") by the Plaintiff-Chapter 7 Trustee (the "Trustee"), along with the answers and responses as filed thereto. Having heard from the parties regarding the remaining issues to be decided in this Adversary Proceeding, the Court entered an *Order Setting Deadlines* on November 8, 2017 (Docket No. 78) with respect to the filing of any dispositive motions and responses, pursuant to which the above-listed matters were filed and are now before the Court.

2

agency the Internal Revenue Service (the "IRS") concurrently on December 15, 2017 (Docket No. 88);

4) *Defendant J. Richard Stephens' Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment*, and *Documentary Appendix To Motion for Summary Judgment*, filed by J. Richard Stephens ("Stephens") on December 15, 2017 (Docket No. 89) along with *Defendant J. Richard Stephens' Statement of Material Facts Not In Genuine Dispute In Support of Motion for Summary Judgment* (Docket No. 90);

5) *Defendant J. Richard Stephens' Omnibus Brief in Response* filed by Stephens on January 12, 2018 (Docket No. 94) regarding the above-referenced motions of the IRS, Plaintiff, and Synovus;

6) *Defendant J. Richard Stephens' Response to Internal Revenue Service Statement of Material Facts*, filed by Stephens on January 12, 2018 (Docket No. 95);

7) *Defendant J. Richard Stephens' Response to Trustee's Statement of Material Facts*, filed by Stephens on January 12, 2018 (Docket No. 96);

8) *Memorandum of Synovus Bank Opposing Motions for Summary Judgment by the Trustee, by J. Richard Stephens, and by The Internal Revenue Service*, filed by Synovus on January 12, 2018 (Docket No. 97);

9) *Response of Synovus Bank to Defendant J. Richard Stephens' Statement of Material Facts Not In Genuine Dispute In Support of Motion for Summary Judgment*, filed by Synovus on January 12, 2018 (Docket No. 98);

10) *Response of Defendant Synovus Bank to Plaintiff's Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried* filed by Synovus on January 12, 2018 (Docket No. 99);

11) *Response of Defendant Synovus Bank to Internal Revenue Service's Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried*, filed by Synovus on January 12, 2018 (Docket No. 100);

12) *Memorandum of Law in Response to the United States' Motion for Partial Summary Judgment, to J. Richard Stephens' Motion for Summary Judgment, and to Synovus Bank's Motion for Judgment on the Pleadings*, filed by the Trustee on January 12, 2018 (Docket No. 101);

13) *Synovus Bank's Reply In Support of Renewed Motion for Judgment on the Pleadings*, filed by Synovus on January 26, 2018 (Docket No. 102);

14) *Defendant J. Richard Stephens' Brief in Reply to Memorandum of Synovus Bank Opposing Motions and Memorandum in Response by Plaintiff*, filed by Stephens on January 26, 2018 (Docket No. 103); and,

15) *Reply Brief in Support of Trustee's Motion for Partial Summary Judgment*, filed by the Plaintiff on January 26, 2018 (Docket No. 104).[2]

---

[2] A *Final Declaratory Judgment as to Georgia Department of Revenue* was entered regarding Defendant Georgia Department of Revenue on December 18, 2017 (Docket No. 91).    Defendants Amegy Bank, N.A, (Docket Nos. 43, 44, and 47) and SunTrust Bank, N.A. (Docket Nos. 21 and 26) were previously dismissed from this action and do not assert any interest in the funds at issue in this matter.    The remaining Defendants, Automobile Acceptance Corp., Danco Financial Inc., State Bank, and Chatham Hill Association, Inc., did not answer the Complaint. Further, they did not respond to the Trustee's Motion for Partial Summary Judgment or otherwise dispute the Trustee's revised listing of encumbrances against the subject property as defined herein, which did not include any interest in favor of these entities.    *See* Plaintiff's Statement of Material Facts, ¶ 18 (Docket No. 86); compare Complaint, ¶ 19(iv), (v), and (xiii), and *see* ¶¶ 20 and 25 (Docket No. 61).    State Bank filed a proof of claim (Claim No. 6) on May 25, 2016 secured in the amount of $2,022,834.41 based on a judgment lien dated February 18, 2014.

*Summary of Facts*

The material facts in this case are not in dispute. At the heart of this Adversary Proceeding is a residence located at No. 3, 3000 Andrews Drive, Atlanta, Georgia (the "Property"). At the beginning of 2011, the Property was jointly owned by William B. Johnson, Jr. (the "Debtor") and his spouse, Sandra Thome Johnson ("Sandra Johnson").[3] The Debtor then executed a *Limited Warranty Deed* (the "Deed"), dated April 7, 2011.[4] The Deed was recorded on April 11, 2011 in the real property records of the Superior Court of Fulton County, Georgia (the "Superior Court"). Through the Deed, the Debtor sought to convey his undivided one-half interest in the Property to Sandra Johnson (the "Transfer"). The Transfer was made for "love and affection," the Debtor received no monetary consideration for the Transfer, and no transfer tax was paid on the Transfer.[5]

Subsequent to the Transfer, Synovus obtained a judgment against the Debtor and others on a defaulted commercial loan and recorded its judgment lien through the filing with the Superior Court of a *Writ of Fieri Facias* on December 1, 2011 (amended on February 6, 2012), in the amount of $6,008,349.22 (the "Synovus Lien"). Stephens obtained an Amended Final Judgment against the Debtor and others following entry of a consent order and recorded a

---

[3] Although Sandra Johnson was originally named as a Defendant in this Adversary Proceeding, she was dismissed from this Adversary Proceeding by Order entered on October 31, 2017 (Docket No. 76).

[4] *See* Exhibit "A," as attached to *Documentary Appendix to Motion for Summary Judgment by J. Richard Stephens*, filed on December 15, 2017 (Docket No. 89)(the "Documentary Appendix")(citations to Exhibits hereinafter are references to the Documentary Appendix). No party has disputed the authenticity of the document copies contained in the Documentary Appendix.

[5] Under Georgia law, a transfer tax is imposed on the conveyance of real property based on the consideration paid for the property conveyed, and is paid prior to the recording of the applicable deed or other instrument. *See* O.C.G.A. § 48-6-1. The failure to pay such tax is indicative of a lack of consideration and suggests the underlying transfer was a gift. *Flatau v. Smith (In re Smith)*, 2007 WL 3238717, *2 (Bankr. M.D. Ga. Oct. 30, 2017).

judgment lien by filing a *Writ of Fieri Facias* with the Superior Court on February 21, 2012 in the amount of $4,600,000.00 (the "Stephens Lien").  Finally, on January 9, 2012, the IRS assessed a federal income tax liability against the Debtor and Sandra Johnson for the tax year 2010 in the amount of $5,099,897.04 and recorded its *Notice of Federal Tax Lien* on October 2, 2012 (the "Tax Lien")(all of the foregoing liens referred to collectively hereafter as the "Liens").[6]

On May 1, 2014, Stephens filed an action in the Superior Court under the Georgia Uniform Fraudulent Transfers Act (O.C.G.A. §§ 18-2-70 *et seq.*) to avoid the Transfer, styled *J. Richard Stephens v. William B. Johnson, Jr. and Sandra T. Johnson*, Civil Action File No. 2014-CV-245803 (the "Superior Court Action")(*see* Exhibit "G," Documentary Appendix).[7]  On November 6, 2015, the Superior Court entered an *Order and Judgment*, ordering and decreeing that the Deed "is NULL AND VOID and was NULL AND VOID *ab initio* pursuant to O.C.G.A. §§ 18-2-70 *et seq.* and O.C.G.A. § 44-5-88" (emphasis in original)(the "Superior Court Judgment")(*see* Exhibit "K").[8]  The Superior Court Judgment also stated that a jury had found in favor of Stephens on the issue of insolvency, finding that the Debtor was insolvent on the date of the Transfer (*see* Exhibit "J").

---

[6] Each of these creditors (the "Creditors") has filed a proof of claim in this case.   See Claims Docket in Main Case, Case No. 16-51072-PMB, Claim No. 1 (IRS), Claim Nos. 2 (withdrawn) & 3 (Synovus), and Claim No. 4 (Stephens).

[7] Georgia's "Uniform Fraudulent Transfers Act" (the "U.F.T.A.") was amended effective July 1, 2015, and became known as the "Uniform Voidable Transactions Act."   *See* O.C.G.A. § 18-2-70.   The amendments to O.C.G.A. §§ 18-2-70 *et seq.* do not apply to a right of action that accrued prior to July 1, 2015, and, accordingly, citations to O.C.G.A. §§ 18-2-70 *et seq.* herein refer to the statute as it existed at the time of the Transfer.

[8] Stephens also filed a *Lis Pendens Notice* on May 1, 2014 with the Clerk of the Fulton County Superior Court regarding the Superior Court Judgment. (*See* Exhibit "H").

As Stephens pressed forward to enforce the Superior Court Judgment, the Debtor filed this Chapter 7 case, Case No. 16-51072-PMB (the "Main Case"), on January 19, 2016 (the "Petition Date").   The Superior Court Action was still pending on the Petition Date, but was stayed by the filing.   11 U.S.C. § 362(a).   The Trustee was subsequently duly appointed as interim Chapter 7 Trustee (*see* Notice of Chapter 7 Bankruptcy Case, filed January 20, 2016 (Main Case Docket No. 6)), and then became the permanent Chapter 7 Trustee in this case at the conclusion of the Section 341 meeting of creditors.   *See* Main Case Docket Entry of February 22, 2016; 11 U.S.C. § 702(d).

The Trustee subsequently moved to sell the Property to third party buyers.   *See generally* Main Case Docket Nos. 25, 26, 32, 34, and 43.   Sandra Johnson consented to the sale of her interest in the Property.   *See* Main Case Docket Nos. 36, 38, and 45.   No party objected to the sale.   Main Case Docket, *passim*.   The Court entered an Order authorizing the sale. Main Case Docket No. 46.   Subsequently, the Trustee sold the Property.   Main Case Docket No. 51.   Because there was no dispute that at all times Sandra Johnson owned at least a one-half (1/2) interest in the Property, the Court directed the Trustee to disburse one-half of the sale proceeds to counsel for Sandra Johnson, less certain costs of sale and taxes.   Docket Nos. 41, 50, and 57.

After the sale of the Property and the disbursement to Sandra Johnson of the proceeds of her undisputed interest in the Property, the Trustee continues to hold $550,343.67 in proceeds (the "Net Sale Proceeds") from the sale of the Property.   These are the net proceeds of sale of the one-half (½) interest in the Property owned by the Debtor at the beginning of 2011.   Along with the Trustee, the IRS, Synovus, and Stephens each claim an interest in the Net Sale Proceeds.

*Arguments of the Parties*

**Trustee**

In the Complaint[9] and the Plaintiff's Motion for Partial Summary Judgment, the Trustee

contends that each of the Liens is subject to avoidance as a preferential transfer pursuant to 11

U.S.C. § 547(b),[10] and that the avoided transfers should be preserved for the benefit of this

bankruptcy estate under 11 U.S.C. § 551. The Trustee argues that, under applicable state law,

following the Transfer the Debtor had no interest in the Property, and that Sandra Johnson

---

[9] Synovus and Stephens filed counterclaims (*see* Docket Nos. 6 and 66; and 10 and 67, respectively). Stephens asserts in his counterclaim that he obtained an "equitable first priority lien" on the Net Sale Proceeds, or, alternatively, that he is entitled to payment of his attorney's fees from a "common fund" (the "Stephens Counterclaim"). As discussed hereafter, the Court rejects the argument that Stephens' interest takes priority based on an "equitable lien" and his status as a diligent creditor. In addition, Stephens filed cross-claims against all Defendants (Docket Nos. 10 and 67). On September 22, 2017, the Court ordered that these cross-claims be stricken, but provided that Stephens would be permitted to present the arguments set forth in the cross-claims as part of his defense to and against the Complaint (Docket No. 70). In its counterclaims, Synovus asserts that it is entitled to a declaratory judgment: (1) awarding it the Net Sale Proceeds less any reasonable costs and compensation properly due to the Trustee under 11 U.S.C. §§ 326 and 506(c); (2) denying any claims of the Trustee in excess of such amounts; (3) declaring that the Synovus Lien is valid, perfected, and first-in-priority to all other liens, rights, claims, and interests in the Net Sale Proceeds (*see* O.C.G.A. § 48-2-56(e) and 28 U.S.C. § 2201); (4) directing the Trustee to distribute the Net Sale Proceeds to Synovus on an immediate basis less such costs and compensation as properly due to the Trustee; and, (5) awarding Synovus its fees and costs.

[10] This provision states as follows:

  (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of
      an interest of the debtor in property--
           (1) to or for the benefit of a creditor;
           (2) for or on account of an antecedent debt owed by the debtor before such transfer was
           made;
           (3) made while the debtor was insolvent;
           (4) made--
                (A) on or within 90 days before the date of the filing of the petition; or
                (B) between ninety days and one year before the date of the filing of the petition,
                if such creditor at the time of such transfer was an insider; and
           (5) that enables such creditor to receive more than such creditor would receive if--
                (A) the case were a case under chapter 7 of this title;
                (B) the transfer had not been made; and
                (C) such creditor received payment of such debt to the extent provided by the
                provisions of this title.

11 U.S.C. § 547(b).

8

became the sole owner of the Property.    Entry of the Superior Court Judgment subsequently

resulted in two (2) distinct transfers; (1) a transfer of an undivided one-half (1/2) interest in the

Property back to the Debtor, and (2) the attachment, fixing, and/or perfection of the Liens on the

Debtor's reacquired interest in the Property.    The Trustee maintains that this attachment of the

Liens occurred within ninety (90) days of the Petition Date, while the Debtor was insolvent, and

enabled the Creditors to receive more on their existing claims than they would have otherwise

received.    On this basis, the Trustee contends that the Liens are subject to avoidance.[11]

The Trustee contests any assertion that the Liens should be deemed effective based on

their original filing date, arguing that these contentions mistakenly rely on the perceived effect of

the Superior Court voiding the Transfer *ab initio*.    The Trustee insists that, under Section

547(e)(3), a transfer "is not made until the debtor has acquired rights in the property."    *See*

*Barnhill v. Johnson*, 503 U.S. 393, 397, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).[12]    Here, the

Trustee asserts that, having made the Transfer, the Debtor did not acquire an interest in the

Property until the entry of the Superior Court Judgment on November 6, 2015.

---

[11]  There is no dispute that the Superior Court Judgment was entered within ninety (90) days of the Petition Date, or
that the Debtor was insolvent at that time.    As to whether the attachment and/or perfection of the Liens will allow
any of the Creditors to receive more that it would have had the purported transfer not been made, the IRS denies that
is the case as to it because the Tax Lien was filed against both the Debtor and Sandra Johnson.    *See* Memorandum
in Support of the United States' Motion for Partial Summary Judgment (Docket No. 88).    More generally, it can
only be the case as to one of the Creditors, since each of them holds a claim sufficient to absorb all of the Net Sale
Proceeds if it is found to hold the first priority interest in them.    The primary dispute, then, is whether the entry of
the Superior Court Judgment constituted a "transfer" at the time that it was entered.

[12]  The Trustee states that the nature of property interests is generally determined by state law, but only when there is
no controlling federal law.    *Barnhill, supra*, 503 U.S. at 398.    *See also Tower Credit, Inc. v. Schott (Matter of
Jackson)*, 850 F.3d 816 (5th Cir. 2017).    As the Trustee acknowledges, *Jackson*, *supra*, disagrees with the holding
of the Eleventh Circuit in *Askin Marine Co. v. Conner (In re Conner)*, 733 F.2d 1560 (11th Cir. 1984) regarding the
time a transfer occurred under Section 547(e)(1)(B), but the court in *Jackson* notes that *Conner* predates *Barnhill*
and did not consider Section 547(e)(3).    *Accord In re Freedom Grp., Inc.*, 50 F.3d 408, 412 (7th Cir. 1995).

Finally, in the alternative, the Trustee seeks a declaration that if the other Liens are not avoided, the Tax Lien is senior to the other Liens, subject to surcharge under 11 U.S.C. § 506(c) and subordination under 11 U.S.C. § 724(b), because the other Liens were "inchoate" prior to entry of the Superior Court Judgment and thus are junior to the IRS Lien.[13]

**IRS**

The IRS filed a motion for partial summary judgment, seeking summary judgment on the issue of whether the Transfer resulted in a preference to it.[14]   The IRS argues that, unlike the other Creditors, its Tax Lien was filed against both the Debtor and Sandra Johnson.   Thus, irrespective of the legal effect of the Transfer, the Tax Lien arose upon the assessment of the 2010 tax liability and attached to all property of these joint taxpayers (*see* 26 U.S.C. § 6321).

---

[13]  The Trustee relies on *United States v. Security Trust & Sav. Bank*, 340 U.S. 47, 50, 71 S.Ct. 111, 95 L.Ed. 53 (1950), in which the U.S. Supreme Court stated that, in examining California statutory law, a creditor may attach property of a defendant as security for the satisfaction of a potential judgment, but such lien is considered contingent or inchoate, similar to a lis pendens notice indicating the creditor holds a right to perfect its lien against the property. Such lien does not grant the creditor the right to proceed against the subject property unless and until the lien is perfected by the entry and recording of a judgment.   In response to the Trustee's assertion that the Liens were inchoate when the IRS filed its Tax Lien, Synovus contends that in recording its judgment lien, it identified the Debtor (and itself as lienor), the property subject to the lien, and the amount of the Lien such that nothing further was required for its perfection.   *See generally United States v. City of New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954).   Upon review of the Synovus Lien as attached to its Proof of Claim filed on April 28, 2016 (No. 3), as well as the Stephens Lien (*see* Claim No. 4, filed on May 16, 2016), and the applicable federal law, these Liens were choate and have priority over the Tax Lien.   Because the Debtor retained his interest in the Property under state law (as set forth below), the Debtor owned rights to the property when the Synovus Lien and the Stephens Lien were recorded.

[14]  The IRS did not assert a counterclaim with its answer to the Complaint.   In its motion, the IRS seeks that summary judgment be granted to it as to Counts I and II of the Complaint because the Tax Lien is not subject to avoidance as a preferential transfer.   It does not seek summary judgment on the issue of its priority *vis a vis* the other Liens or Creditors.   The IRS filed a Statement of Material Facts as to Which There Is No Genuine Issue To Be Tried (Docket No. 88).   In their responses, (*see* Docket Nos. 95, 100, and 101), the other parties hereto generally agree there is no dispute of material fact.   Synovus does object to any characterization of the Superior Court Judgment's legal effect as recognizing that a transfer, in fact, occurred.   The IRS has not responded to the other summary judgment motions.   Under Local Rule BLR 7007-1(c), a failure to respond indicates that the motion is unopposed.   It is not disputed that the IRS filed its Notice of Federal Tax Lien on October 2, 2012, which post-dates both the Transfer and the filing of the Liens.   Further, the IRS filed a Proof of Claim asserting only an unsecured claim in the amount of $4,544,390.40.   *See* Claim No. 1, filed April 4, 2016.   That Proof of Claim was never amended to assert a secured claim in this case.   Claims Docket, *passim*.

Because the IRS could enforce its Tax Lien against the entirety of the Property in collecting the tax debt regardless of the Superior Court Judgment, the voiding of the Transfer did not in any way affect its lien rights or improve its relative position as to the Net Sale Proceeds.    Thus, the IRS maintains that the voiding of the Transfer did not enable it to receive more than it would have otherwise received had the disputed conveyance in the Deed not been avoided, and so the fixing of the Tax Lien is not voidable as a preference.    *See* 11 U.S.C. § 547(b)(5).

**Synovus**

Synovus argues that, because the Superior Court expressly ruled the Transfer was void *ab initio*, no transfer in fact occurred.    Hence, the Debtor never effectively conveyed his interest in the Property, and so he did not reacquire such interest.    Synovus insists that the Debtor was in full possession of his interest when Synovus recorded its lien, which was long before any other lien was filed.    Based on this reasoning, Synovus asserts that it holds a valid, perfected, and first priority lien superior to all competing claims in accordance with O.C.G.A. § 44-14-323.    The Synovus Lien attached to the Debtor's interest in the Property when it was originally filed four (4) years before the Petition Date, and entry of the Superior Court Judgment does not support its avoidance as a preferential transfer.[15]

---

[15] *See In re Burkett*, 295 B.R. 776, 779, 783 (Bankr. W.D. Pa. 2003)(concluding that *ab initio* means "never occurred" in construing an order revoking satisfaction of mortgage).    Because property rights in bankruptcy cases are generally determined by state law, Synovus contends that this Court is bound by the holding in the Superior Court Judgment that the Transfer was void from its inception, and not merely voidable.    Further, although federal law governs the priority of federal tax liens (*In re McTyre Grading & Pipe, Inc.*, 193 B.R. 983, 986 (Bankr. N.D. Ga. 1996)), such liens are subordinate to prior-filed liens of judgment creditors.    *See In re Craft-Latimer*, No. 15-51383-BEM, 2015 WL 5042108, at *2 (Bankr. N.D. Ga. Aug. 10, 2015); *see also* 26 U.S.C. §§ 6321 & 6323. As noted above (note 13, *supra*), the Court accepts Synovus' argument disputing the Trustee's assertion that the Synovus Lien was inchoate when the IRS filed its Tax Lien.

Anticipating Stephens' contention that only he may rely on the Superior Court Judgment voiding the Transfer, Synovus counters that this argument ignores the fact that the Superior Court declared the transfer void *ab initio* as a matter of law.[16]   Although Georgia's U.F.T.A. provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor" where the intent to defraud or other circumstances are proved (*see* O.C.G.A. § 18-2-74(a)), a court may declare a transfer absolutely void as to the world. *See* O.C.G.A. § 18-2-77(a)(3)(C) (creditor may obtain "[a]ny other relief the circumstances may require").   As Synovus points out, even if a fraudulent transfer may be voided only for the benefit the creditor who presents a successful claim, thereby leaving the transfer intact in regard to other creditors, here the Superior Court did not void the Transfer to Stephens alone or declare the Transfer merely voidable. Instead, the Superior Court, aware of the various claims asserted against the Property, declared the Transfer null and void, thereby rendering it void as to the whole world for the benefit of *all* creditors of the Debtor.

Moreover, Synovus states that under O.C.G.A. § 44-5-88 ("Gifts void against creditors and bona fide purchasers"), expressly cited in the Superior Court Judgment as an additional basis for relief, "[a]n insolvent person may not make a valid gift to the injury of his existing creditors." As an illegal gift made while the Debtor was insolvent in violation of O.C.G.A. § 44-5-88, the Transfer was not merely voidable, but instead is now and always has been null and void and without any legal effect as to all the Debtor's creditors.[17]   For these reasons as well as other

---

[16] According to Stephens, because the Debtor conveyed away his interest in the Property before any liens attached, no other creditor holds a valid lien against such an interest of the Debtor, and Stephens' claim takes priority.

[17] This statute provides that –

(a)  An insolvent person may not make a valid gift to the injury of his existing creditors.

reasons,[18] Synovus asserts that it is entitled to receive the Net Sale Proceeds based on its relative status as the highest-priority secured creditor.

**Stephens**

Stephens urges that his claim to the Net Sale Proceeds is not voidable as a preference because it neither depends on nor derives from the Stephens Lien.[19]  Instead, it arises from his successful prosecution of the Superior Court Action and his right under the U.F.T.A. as a creditor to satisfy the debt owed to him by the Debtor against the Property by invalidating its conveyance.  He claims that it is this status that entitles his claim to priority over the senior Synovus Lien.  In other words, Stephens maintains that his claim is based on the Superior Court Judgment and its declaration regarding the Transfer, which the Trustee acknowledges did not operate as a "conveyance" by the Debtor (but an acquisition of an interest in the Property).

---

O.C.G.A. § 44-5-88(a).  Synovus contests the attempt by the Trustee or Stephens to collapse this independent provision for relief into the remedial scheme set forth under the U.F.T.A.  Because an illegal gift is void, a creditor with a judgment does not need to use the remedies of the U.F.T.A. including any requirement that it first obtain an attachment.  *See* O.C.G.A. § 18-2-77(a)(2); *but see* O.C.G.A. § 18-2-77(b).  Further, Synovus notes that additional relief as referenced in Section 18-2-77(a)(3)(C) permits use of Section 44-5-88(a).

[18] Synovus also argues, among other things, that (1) the Superior Court Judgment is final and binding, (2) Stephens is estopped from denying that the Transfer was voided as to all creditors since the parties herein all relied on that finding in supporting the Trustee's sale of the Property, (3) Stephens' asserted status as a "diligent creditor" does not allow him to displace a senior lienholder (citing, among others, *Lamchick, Glucksman & Johnston, P.A. v. City Nat'l Bank of Fla.*, 659 So.2d 1118 (Fla.Dist.Ct.App. 1995)), (4) Stephens' argument that any levy on the Property by other creditors would be subject to his interests based on the Superior Court Judgment is without support (*see* O.C.G.A. §§ 9-12-80 *et seq.*, and § 9-13-60(c)(proceeds of sale applied first to liens superior to claims of plaintiff in execution)) and is moot as the Debtor's interest became property of the estate under 11 U.S.C. § 541(a)(1), and (5) Stephens is not entitled to compensation for his attorney's fees based on the "common fund" doctrine.  Synovus also disputes the Trustee's claim to a surcharge under 11 U.S.C. § 506(c) and, based on the seniority of the Synovus Lien over the Tax Lien, maintains any claim for subordination under 11 U.S.C. § 724(b) is moot.  Finally, because there was no transfer, Synovus argues the Trustee's argument that, hypothetically, the Trustee could have sued under the U.F.T.A. and used the statute of limitations of the Fair Debt Collection Practices Act is not relevant.

[19] Stephens urges that the Superior Court Judgment did not act to re-convey a property interest to the Debtor based on an avoidance of the Transfer under the U.F.T.A.  According to Stephens, it is his status as a creditor that is determinative in his U.F.T.A. action, not his rights as a judgment lien holder.

13

Therefore, Stephens maintains that his claim cannot be preferential, and further that the Trustee is not entitled to a surcharge against him since Stephens' claim is not reliant upon a secured claim against property of this estate.[20]

With regard to Synovus, Stephens further notes that, due to the Transfer, no subsequently filed judgment or tax lien attached to an interest of the Debtor in the Property.    Moreover, under Georgia law, a fraudulent transferor of property acquires no interest in the property recovered by virtue of the avoidance of its transfer adjudged as fraudulent.    Citing the Official Comments to the Uniform Voidable Transactions Act as adopted in Georgia,[21] Stephens contends that the remedy set forth in O.C.G.A. § 18-2-77(a)(1) provides that not only is the property not restored

---

[20]  Stephens adds that the Trustee has no stake in the ultimate distribution of the Net Sale Proceeds because there are no unsecured creditors of this estate.    With respect to the IRS, Stephens avers in his uncontested Statement of Material Facts that the income taxes covered by the Tax Lien were for tax year 2010 and were not yet due and payable when the Deed was recorded.    Docket No. 89, para. 7.    Stephens further points out that the IRS did not file a timely response to the original complaint herein and is in default.    In addition, as mentioned above, the Proof of Claim filed by the IRS (Claim No. 1) was filed as a general unsecured claim, which operates as an estoppel regarding its assertion of a secured interest in the Net Sale Proceeds.    Finally, Stephens states that the IRS is not a good faith transferee for value under O.C.G.A. § 18-2-78(b) since the Tax Lien was involuntary.    Thus, the argument that the Tax Lien attached to the Property when title was in the name of Sandra Johnson does not protect the Tax Lien against Stephens' right to recovery.    To date, the IRS has not responded to Stephens' Motion or any of his statements of fact or legal arguments.    *See* Local Rule BLR 7056-1(a)(2)(facts not controverted deemed admitted).

[21]  The cited portion of these Comments state as follows:

> "Avoidance" is a term of art in this Act, for it does not mean that the transfer or obligation is simply rendered void. It has long been established that a transfer avoided by a creditor under this Act or its predecessors is nevertheless valid as between the debtor and the transferee. For example, in the case of a transfer of property worth $100 by Debtor to Transferee, held voidable in a suit by Creditor-1 who is owed $80 by Debtor, "avoidance" of the transfer leaves the $20 surplus with Transferee. Debtor is not entitled to recover the surplus. Nor is Debtor's Creditor-2 entitled to pursue the surplus by reason of Creditor-1's action (though Creditor-2 may be entitled to bring its own avoidance action to pursue the surplus). The foregoing principle is embedded in the language of subsection (a)(1), which prescribes "avoidance" only "to the extent necessary to satisfy the creditor's claim." Section 9(a) of the Uniform Fraudulent Conveyance Act was similarly limited.

Official Comments, Uniform Voidable Transactions Act (as amended in 2014), Section 7, Remedies of Creditor, ¶ 7, p. 38 (citations omitted)(available at http://www.uniformlaws.org/shared/docs/Fraudulent%20Transfer/2014_AUVTA_Final%20Act_Amended_2016mar8.pdf).    Stephens states that these comments are instructive because this provision as adopted in Georgia in 2015 was not materially altered from the U.F.T.A., which controls herein.

14

to the debtor, but the avoidance only inures to the benefit of the acting creditor.[22]    Stated

differently, the U.F.T.A. is not designed to invalidate transfers generally, but to provide a cause

of action for a particular petitioning creditor to have a transfer set aside as a form of relief.    This

remedy is provided whether or not the petitioning creditor holds a judgment against the debtor or

even enjoys any lien rights in the subject property.    In sum, Stephens contends that Synovus

never attained a lien on any interest of the Debtor in the Property, and has no claim to the Net

Sale Proceeds since it did not bring a timely claim under the U.F.T.A. within the four (4) year

period required under O.C.G.A. § 18-2-79.    *See also* O.C.G.A. § 18-2-74(a)(1) & (2); O.C.G.A.

§ 18-2-75(a).

*Standard of Review*

Summary judgment may be granted pursuant to Federal Rule of Civil Procedure 56,

applicable herein through Federal Rule of Bankruptcy Procedure 7056, if "there is no genuine

issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of

law."    Fed.R.Civ.P. 56(c).    In deciding a motion for summary judgment, the court "is not to

weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505,

2511, 91 L.Ed.2d 202, 212 (1986).    Further, all reasonable doubts should be resolved in favor of

---

[22]  This statute provides that –

> (a)  In an action for relief against a transfer or obligation under this article, a creditor, subject to
> the limitation in Code Section 18-2-78, may obtain:
>
> (1)  *Avoidance* of the transfer or obligation *to the extent necessary to satisfy the creditor's
> claim*; ….

O.C.G.A. § 18-2-77(a)(1) (emphasis supplied).    Stephens also points out that the applicable statute of limitations
had run against Synovus and that Synovus never joined the Superior Court Action.    *See* O.C.G.A. § 18-2-79.

15

the non-moving party, and "if reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied."  *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir. 1994), citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985).   Presumptions or disputed inferences drawn from a limited factual record cannot support entry of summary judgment, and the court cannot choose between competing inferences.  *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).[23]

Although various motions have been filed and submitted for decision with supporting memoranda and exhibits, the posture of this proceeding is essentially cross-motions for summary judgment.   Given the state of the record, and because material outside the pleadings has been offered, Synovus' Renewed Motion for Judgment on the Pleadings may be considered under the same standard.  *See* Fed.R.Bankr.P. 7012(b); Fed.R.Civ.P. 12(d); *see also Property Mgmt. & Inv., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985).   In addition, each party has consented to entry by this Court of a final order or judgment on the issues presented for decision.[24]   Based on its review of the record, only questions of law remain for decision.

---

[23] Once the party moving for summary judgment has identified materials demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rest on mere denials or conclusory allegations, but must go beyond the pleadings and designate, through proper evidence such as by affidavits on personal knowledge or otherwise, specific facts showing the existence of a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 948-49 (11th Cir. 1993); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).

[24] *See* Docket Nos. 61 (para. 3), 67 (para. 3), 79, and 93.

16

*Discussion*

To resolve this case, this Court must determine the legal effect of the Superior Court Judgment on the priority of the competing claims to the Net Sale Proceeds, as well as the interaction between the Superior Court Judgment and the Trustee's avoidance powers.[25]   To summarize again, the Trustee asserts the Superior Court Judgment operated as a re-conveyance of the Property to the Debtor, and the Liens attached at that time.   Because the Superior Court Judgment was entered within the ninety (90) day preference period, the Trustee asserts that the Liens are avoidable.   The IRS contends that the Superior Court Judgment is not determinative as to its claim because the Tax Lien attached to the Property whether owned jointly by the Debtor and Sandra Johnson or solely by Sandra Johnson, and thus its rights are not affected by the Superior Court Judgment.   Synovus insists that, by the express terms of the final Superior Court Judgment, there was no transfer, and its senior Lien takes priority as being filed first-in-time.   Lastly, Stephens argues that, based on the Superior Court Judgment, the Debtor had no ownership interest in the Property on the Petition Date, and the one-half (1/2) interest conveyed by the Debtor to Sandra Johnson in 2011 was avoided for his benefit alone under Georgia law.[26]

---

[25] The issue for decision might alternatively be stated as follows: in the absence of the Transfer, Synovus would have obtained and retained the first priority lien on the interest in the Property originally held by the Debtor by virtue of its first-in-time judgment.   Does the fact that the Debtor made a patently fraudulent transfer of his interest in the Property to his wife just before Synovus obtained and recorded its judgment somehow change that result in circumstances where the Transfer was subsequently declared to be void *ab initio* by a court with jurisdiction over both the transferor and the transferee, albeit at the request of a different creditor of the Debtor?   This Court, for the reasons set forth herein, holds that it does not.

[26] Each of the Creditors' respective claims are larger than the amount of the Net Sale Proceeds, such that the claim that is ultimately determined to have priority will exhaust the full amount of the Net Sale Proceeds, subject to any expense recovery that is permitted to come ahead of the relevant claim.

First, as to the claims of the IRS, a federal tax lien arises by operation of law under 26 U.S.C. § 6321 and § 6322 upon the assessment of the tax and attaches to all property and rights to property that belong to the taxpayer.    As provided in 26 U.S.C. § 6323(a) & (f), however, the lien as imposed is not valid against judgment lien creditors like Synovus and Stephens until a notice of federal tax lien is filed.

Here, on January 9, 2012, while the Property was purportedly titled in the name of Sandra Johnson, the IRS made a tax assessment against both the Debtor and Sandra Johnson for joint federal income tax liabilities for the tax year 2010.[27]    Thus, a tax lien arose on that date and attached to all property and rights to property belonging to the Debtor and Sandra Johnson, which included their respective interests in the Property.    The Notice of Federal Tax Lien, however, was not filed until October 2, 2012, which was after the Liens of the other Creditors were filed, and so it is subordinate to them.    *See Craft-Latimer, supra*, 2015 WL 5042108. Based on the Court's ruling below that Transfer is not avoidable, the relative priorities of the Liens are not disturbed by the Transfer or the Superior Court Judgment, and the IRS is not entitled to any of the Net Sale Proceeds.[28]

---

[27]  Asserting the broad definition of "property" or "rights to property" under 26 U.S.C. § 6321, the IRS argues this provision includes a taxpayer's interest in a property owned with a spouse as a tenancy by the entirety.    As correctly noted by the Creditors in their briefs, however, Georgia does not recognize such an estate between spouses, who co-own property as tenants in common.    *See e.g. Heid v. Astrue*, 2012 WL 5874318, *4 (S.D. Ga. Oct. 26), report adopted, 2012 WL 5874338 (S.D. Ga. Nov. 20, 2012), citing O.C.G.A. §§ 44-6-120, -121.

[28]  The Court has previously found that the Liens were choate and enforceable (*see* note 13, *supra*).    Further, the IRS has not contested Stephen's statement that the income taxes covered by the Tax Lien were for tax year 2010 and were not yet due and payable when the Deed was recorded.    Docket No. 89, para. 7.    The IRS did not file a timely response to the original complaint herein.    In addition, the proof of claim filed by the IRS (Claim No. 1) was filed as a general unsecured claim and operates as an estoppel to any assertion of a secured interest in the Net Sale Proceeds.    Finally, it appears that the IRS is not a good faith transferee for value under O.C.G.A. § 18-2-78(b) since the Tax Lien is an involuntary lien.    In view of all of the foregoing and the above, although the motion of the IRS is meritorious to the extent that the Tax Lien is not avoidable as a preference, it does not result in the IRS taking priority over Synovus or Stephens.

As to the Trustee, the key to his argument lies in the assertion that the Superior Court Judgment transferred a one-half (1/2) interest in the Property at issue back to the Debtor. The Trustee claims that only then could the Liens attach to that property interest, and the Creditors' positions were thereby improved in violation of 11 U.S.C. § 547.[29] The Trustee's position is incorrect because it ignores the specific language used in the Superior Court Judgment and the provisions of Georgia law upon which the Superior Court relied. Further, *Barnhill*, *supra*, does not, as the Trustee asserts, compel selective enforcement of the Superior Court Judgment. 503 U.S. at 398; *see also Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)(property rights generally determined by state law); *Title Max v. Northington (In re Northington)*, 876 F.3d 1302, 1310 (11th Cir. 2017). The Superior Court Judgment cannot be used to avoid the Transfer, but then be ignored as to the scope and effect of the Superior Court's express declaration that the Transfer is void *ab initio*.[30]

Citing to Section 547(e)(3), however, the Trustee maintains that, under federal law, the operative transfer only occurred once the Debtor had reacquired rights in the Property.[31] Under

---

[29] As noted above, the Trustee alternatively argues that any interest re-conveyed to the Debtor was subject to the Tax Lien that attached to the entire interest in the Property when it was titled in the name of Sandra Johnson. Given the ruling here that the one-half (½) interest at issue here was not re-conveyed to the Debtor by the Superior Court Judgment, and thus the Tax Lien had already attached to that interest, this argument does not support a re-positioning of the IRS Lien ahead of the other, earlier filed Liens.

[30] Even if no transfer occurred until the Debtor acquired an interest in the Property, the Trustee has offered no controlling, countervailing federal law on the effect of a state court ruling under state law that a transfer is null and void, or otherwise suggesting that this Court should not give the words used by the Superior Court their ordinary meaning. The Trustee's related assertions that he could have sought to avoid the Transfer himself do not seem relevant to his preference claim, particularly since he has thus far chosen not to do so.

[31] Stephens appears to agree with the Trustee's analysis to the extent that under the U.F.T.A., the Transfer was not invalidated *in toto*, as if it never happened. Acknowledging there is no direct Georgia case authority on point, Stephens adds, however, that the Transfer was voidable only insofar as a remedy was created in favor of Stephens' based on the meritorious assertion of his right to recovery in bringing the avoidance suit. Comment 7, as cited by both the Trustee and Stephens in their briefs, states that "[i]t has long been established that a transfer *avoided* by a

19

Georgia law, the Trustee contends that, since a fraudulent transfer remains entirely valid as between a transferor and transferee, the Debtor had no right in the Property to which any lien could attach and become perfected *until* the entry of the Superior Court Judgment.  *See* Comment 7, U.V.T.A.[32]   Moreover, the Trustee notes that neither Synovus nor Stephens ever sought to attach or levy execution on the Property as provided under O.C.G.A. § 18-2-77(a)(2) and (b), remedies that the Trustee asserts would not be included in the statute if a judgment creditor's lien was already deemed to have attached.[33]

In short, the Trustee asserts that the Transfer was merely voidable, and not void, until the Superior Court declared it to be void.   Although the distinction between a "void" and a "voidable" transfer may have been significant in characterizing the effect of the Transfer under a fraudulent conveyance analysis at some point, it is no longer relevant here.   In this case, the Superior Court, a state superior court with competent jurisdiction has, supported by the two distinct provisions of Georgia law it cited, determined that the Transfer "is NULL AND VOID and was NULL AND VOID *ab initio* pursuant to O.C.G.A. §§ 18-2-70 *et seq.* and O.C.G.A.

---

creditor under this Act or its predecessors *is nevertheless valid as between the debtor and the transferee*" (emphasis supplied)(*see* note 21, *supra*).   This statement follows its description of "avoidance" as not being the same as "simply rendered void" and tends to support Stephens' reading of O.C.G.A. § 18-2-77(a)(1) that the beneficiaries of an avoidance are limited.   (*See* note 22, *supra*).   However, this argument about what might happen under the U.F.T.A. (ignoring O.C.G.A. § 44-5-88) is no longer relevant in light of what actually did happen in the Superior Court Judgment (*i.e.* the Transfer was voided *ab initio*).   Further, even if such a result were not permitted under the U.F.T.A., the Superior Court Judgment also relied on O.C.G.A. § 44-5-88.

[32]  Without citing any supporting authority, the Trustee, relying on Comment 7 (*see* note 21, *supra*) and the assertion that 11 U.S.C. § 547(e)(3) is controlling federal law (*see Barnhill, supra*), seems to deny that the Superior Court could provide retroactive nullification as a remedy.   However, that is precisely what it did, and in the posture of this case, it is not an effect that can be undone here.

[33]  The Trustee cites *In re Westpark One, LLC*, 2015 WL 5199368 (Bankr. D.Ariz. Sept. 4, 2015) for the proposition that a judgment creditor that records its judgment after a transfer of property by a judgment debtor acquires no lien even if the transfer is subsequently set aside as fraudulent.   However, that decision holds that under Arizona's version of the U.F.T.A. and Arizona law, fraudulent transfers are voidable, not void *ab initio*, as the Transfer was found to be here.   *Cf.* O.C.G.A. § 18-2-77.

§ 44-5-88." *See* Exhibit "K," Documentary Appendix.   Based on the Superior Court Judgment, the Property remained an asset of the Debtor subject to the rights of his creditors.   In the case of a void transfer, Georgia law provides that the judgment liens obtained by existing creditors may attach to such property.[34]   Although some of the authority for this proposition cites to prior codifications of Georgia fraudulent transfer law, no basis has been offered or found to discount their value in construing the applicable law cited in the Superior Court Judgment.[35] And, more recently, another judge of this Court held that a creditor holding a claim against a debtor at the time of a fraudulent conveyance who thereafter reduces that claim to judgment and files its judgment lien (a "pre-transfer creditor") may seek to set aside the conveyance under O.C.G.A. § 18-2-74 and recover such property on grounds of either actual or constructive fraud. *See Kipperman v. Onex Corp.*, 411 B.R. 805, 830-31 (N.D. Ga. 2009), *reconsideration denied in*

---

[34] In Georgia, "[f]raudulent conveyances are voidable in respect of creditors [and] [t]itle remains in the debtor subject to subsequent judgments in favor of his creditors." *United States v. Reid*, 127 F.Supp.2d 1361, 1380 (S.D.Ga. 2000), citing *Coleman v. Law*, 170 Ga. 906, 910, 154 S.E. 445 (1930).   Georgia law also provides that when a judgment lien becomes effective, it binds all of the judgment debtor's property then owned or after-acquired. *See* O.C.G.A. § 9-12-80; *see also In re Lively*, 74 B.R. 238 (S.D. Ga. 1987), *aff'd sub nom. without opinion, Walker v. Claussen Concrete Co.*, 851 F.2d 363 (11th Cir. 1988)(holding that a judicial lien attached to property acquired by a bankruptcy trustee who prosecuted a fraudulent conveyance action); *Cohutta Mills, Inc. v. Hawthorne Indus.,* 179 Ga.App. 815, 348 S.E.2d 91 (1986)(lien enforceable against property recovered by trustee).   In *Coleman, supra*, 154 S.E. at 448, the Georgia Supreme Court began its analysis with this principle of law (*i.e.* the binding effect of judgments) stating that as to void conveyances, the property is subject to subsequent judgments.   One oft-cited treatise notes *Coleman* as contrary authority to the rule that a judgment is not a lien on land fraudulently conveyed prior to the judgment.   *See* 1 G. Glenn, Fraudulent Conveyances and Preferences, § 121, at 234-35 (Rev. ed. 1940). Cases cited by Glenn (p. 234, n. 51) in favor of this rule are the same cases cited in *Westpark, supra*, 2015 WL 5199368 at *4 (*see* note 33, *supra*).   Similarly, the court in *In re Silver*, 302 B.R. 720, 724 (Bankr. D. N.Mex. 2003*), aff'd in part, rev'd in part*, 303 B.R. 849 (B.A.P. 10th Cir. 2004), sought to distinguish *Lively, supra*, on grounds that, unlike Georgia law, New Mexico law only makes such transfers voidable.

[35] The Georgia Supreme Court's statement in *Coleman, supra*, about the binding effect of judgments on property conveyed prior to rendition of a judgment was made in connection with a conveyance made with an actual intention to delay, hinder, or defraud creditors - transfers that are "void."   The court in *Reid, supra*, thereafter applied that statement of Georgia law to transfers both actually and constructively fraudulent, and held such fraudulently transferred property "[s]ubject to any valid liens or other encumbrances" of the transferor.   127 F.Supp.2d at 1380. *Compare* O.C.G.A. § 18-2-22(2) & (3)(repealed)(cited in *Reid, supra*); Civil Code 1910, § 3224(2)(cited in *Coleman, supra*); and O.C.G.A. § 18-2-74(a)(1), § 18-2-75(a).

*part*, 2010 WL 761227 (N.D. Ga. Mar. 2, 2010)(upholding trustee's standing under 11 U.S.C. § 544(b)), citing *In re Veterans Choice Mortg.*, 291 B.R. 894, 897 n. 4 (Bankr. S.D. Ga. 2003), citing *United States v. Hickox*, 356 F.2d 969, 972-73 (5th Cir. 1966).

Based on the foregoing, as a result of the Superior Court Judgment, the Transfer was void and the Property remained burdened by the valid Liens of the Creditors.    *Coleman, supra* (notes 34 and 35), reflects a strong presumption under Georgia law in favor of the rights of secured creditors in such circumstances.    *See Reid, supra*; notes 34 and 35, *supra*.    Consequently, there was no "reacquisition" of an interest in the Property; the Creditors simply retained their lien rights regarding the Property.    Further, 11 U.S.C. § 547(e)(3) is not to the contrary, as it refers to the timing of a transfer in connection with the avoidable preference analysis (*i.e.* whether it occurred within the avoidance period), but is not otherwise determinative of the rights and remedies provided creditors under state law.    *See Flatau v. ASICS Tiger Corp. (In re Wall)*, 216 B.R. 1016, 1018 n. 5 (Bankr. M.D. Ga. 1998); *accord Butner v United States, supra*, 440 U.S. 48 (interest of secured creditor afforded same protection that is provided outside bankruptcy).[36] The Superior Court Judgment also expressly cited O.C.G.A. § 44-5-88 ("Gifts void against creditors and bona fide purchasers"), as a basis for its decision.    Under this provision, a putative transfer may be declared and treated void as an invalid gift made "to the injury of [a debtor's] existing creditors" by an insolvent debtor and set aside for the benefit of creditors.    Based on

---

[36] *See also Reilly v. Sabin*, 81 F.2d 259 (D.C.Cir. 1935)(finding that trustee under former Bankruptcy Act not entitled to enjoin holders of judgment liens from proceeding with action to set aside allegedly fraudulent transfer brought within four (4) months of bankruptcy since judgments at issue, even though entered subsequent to transfer, were obtained *outside* such period).    *Compare In re Amtron*, 192 B.R. 130, 132 (Bankr. D.S.C. 1995)(federal tax lien attached to fraudulently conveyed patents).    The court in *Amtron* cited *Lively, supra*, as analogous support of its analysis under South Carolina law that such conveyances are set aside as void.

the Superior Court's ruling, the Creditors may assert their rights against the Property the Debtor

sought to convey.[37]

Stephens' attempts to limit the benefit of the Superior Court Judgment to him alone and

to moderate its plain wording on grounds that the Superior Court Judgment remained

interlocutory on the Petition Date are unavailing.    Stephens contends that even if the ruling is

construed broadly, other issues remained to be litigated and no affirmative recovery other than

the decree of avoidance had been provided to Stephens, who again, was the sole petitioning

creditor.[38]    This challenge to the effect of the Superior Court Judgment must fail for several

reasons.    As Stephens admits (*see* Stephens' Brief in Support, p. 11 (Docket No. 89)), by virtue

of the agreed sale of the Property[39] and Sandra Johnson's abandonment of any claim to the Net

Sale Proceeds, the Superior Court Judgment has become final.    Further, the parties herein have

---

[37] Although Stephens maintains this provision does not override the more specific remedial provisions of the U.F.T.A., he cites no case authority to support the notion that its inclusion by the Superior Court in its Judgment is not significant or cannot be relied upon.

[38] The Superior Court Judgment appeared to contemplate further proceedings that might provide a basis for awarding additional relief, which supports the interpretation of the Superior Court Judgment adopted here that such relief was not intended to be restricted to Stephens.    In fact, Stephens was seeking such additional relief when the Debtor filed this bankruptcy case and all such efforts were stayed.    *See* Plaintiff's Omnibus Motion in Respect of Levy and Partition Proceedings and Memorandum in Support Thereof, at Exhibit "L" (citing, among others, O.C.G.A. § 18-2-77(b)).    More specifically, Stephens had filed a motion seeking levy and sale against the Debtor's interest in the Property as transferred or, alternatively, an equitable partition of the Property by sale.    That motion was pending on the Petition Date and likely precipitated the filing of this bankruptcy case.    The relief sought therein has effectively been subsequently obtained in this Court, rendering those requests moot.

[39] Stephens states that his agreement to the sale, which in his view only conveyed the Debtor's possessory right as a tenant at sufferance and the fee simple interest owned by Sandra Johnson, did not mean he acquiesced in the wording of the Superior Court Judgment.    Thus, in Stephen's view, the Net Sale Proceeds remain subject to Stephens' rights as the avoiding creditor under the Superior Court Judgment, which, in his view, had not been finally determined.    As discussed herein, however, the broader scope of the Superior Court Judgment has been adequately established.

universally treated the Superior Court Judgment as final, and so will this Court,[40] any challenges

to the finality thereof having been waived.

Stephens also argues that he obtained an equitable first priority lien and is entitled to a

recovery on that basis by virtue of his actions as a diligent creditor.    Georgia law recognizes

such liens as a remedy for holders of a beneficial interest wrongfully transferred to another.    *See*

*In re Dukes*, 213 B.R. 202, 204 (Bankr. S.D. Ga. 1997), citing *Pittman v. Pittman*, 196 Ga. 397,

408, 26 S.E.2d 764, 772 (1943).    Even if Stephens held such a lien as of the date when he filed

the Superior Court Action, however, such date was subsequent to the date of recordation of the

Synovus Lien.    Stephens has provided no authority for creating an exception to Georgia rules

for determining priorities among liens on real property (O.C.G.A. § 44-14-323; § 9-12-87), or

allowing his equitable lien priority over an earlier filed lien under a diligent creditor analysis.

*Accord Lamchick, Glucksman & Johnston, P.A., supra*, 659 So.2d at 1119 (applying Florida

law).    Although Stephens was the diligent creditor who initiated the action that resulted in the

avoidance of the Transfer as a defined remedy, the Court finds no legal basis to displace the

existing priorities of valid judgment liens just because he did so.

Recognizing the existing rights and relative priorities of the judgment lien creditors of the

Debtor, the Superior Court decided under Georgia law that the Transfer is void as a fraudulent

conveyance and as an illegal gift.    Although such judicial declaration is essential, and an

additional act by a creditor needed to complete enforcement, affirmation that the Transfer is void

---

[40] Whether or not the Superior Court Judgment would have been deemed to have achieved sufficient finality for purposes of appeal under state law, and whether or not it is subject to collateral review, given the parties' reliance on its ruling in this bankruptcy case with respect to the sale of the Property and as a basis for their arguments in the Adversary Proceeding, the Court believes it is proper to give the Judgment its intended effect.    Further, as a matter of comity, this Court believes it would be inappropriate to allow a collateral challenge here to the order of a state court with competent jurisdiction entered on matters presented to and necessarily adjudicated by that court.

24

did not enable Synovus to improve its position such that it would receive more than it otherwise would have.[41]    Instead, Synovus obtained its lien interest when it recorded its Lien (and thus outside of the preference period), so that it is not subject to avoidance as a preference by the Trustee under 11 U.S.C. § 547.[42]    Because the Synovus Lien was filed of record prior to the other Lien claimants herein, Synovus has priority as to the Net Sale Proceeds.

This conclusion does not, however, entirely resolve the matter.    There remain the claims by Stephens and the Trustee for recovery of their expenses incurred in certain parts of this enforcement odyssey.    First, Stephens contends that he is entitled to a recovery based on the Georgia "common-fund" doctrine, which allows for the payment of attorney's fees when litigation pursued by one party produces benefits in which others may share who were not a party to that proceeding.[43]    *See e.g. State v. Private Truck Council, Inc.*, 258 Ga. 531, 534-35, 371 S.E.2d 378, 381 (1988); *Ewing v. First Nat'l Bank of Atlanta*, 209 Ga. 932, 76 S.E.2d 791 (1953); *see also The Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).    This doctrine of taxing certain costs in equitable actions against beneficiaries to a successful lawsuit who did not otherwise contribute to its cost, is a well-recognized exception to

---

[41] Although judicial assessment that a transfer is void is generally necessary, a secured creditor does not receive new rights as a result of such ruling—its existing interest is simply recognized.

[42] The Trustee's argument under *Gordon v. Harrison (In re Alpha Protective Serv., Inc.)*, 531 B.R. 889 (Bankr. M.D. Ga. 2015), that he could have avoided the Transfer using 11 U.S.C. § 544(b), is not relevant as the Transfer has already been avoided.    Instead, the Court must address the effect of that avoidance.    Moreover, there is contrary authority in this district.    *See MC Asset Recovery, LLC v. Southern Company*, 2008 WL 8832805, 2017 Bankr. LEXIS 123608 (N.D. Ga. July 7, 2008)(relying upon provision in the adopting act of no intent to modify the provisions of Title 11); *see also MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530 (5th Cir. 2012).

[43] *See* Counterclaim and Cross-Claims (para. 5)(Docket No. 10), and Counterclaims (para. 8) and Cross-Claims (para. 2)(Docket No. 67).

the rule that litigants bear their own attorney's fees.    It protects a party who labors to create the common fund and prevents unjust enrichment.

Here, Stephens stresses that it was his efforts and those of his counsel in the Superior Court Action that produced what is now the Net Sale Proceeds,[44] and his right to recover from this "common fund" as created by state law prior to the Petition Date should be respected. Stephens seeks between fifteen (15%) and thirty (30%) percent of the Net Sale Proceeds. Synovus disputes Stephens' entitlement to payment of his attorney's fees or other costs out of its claim to the Net Sale Proceeds based on the "common-fund" doctrine.    Synovus insists that such a recovery from a bankruptcy estate is unfounded based on a judgment lien, and because this doctrine is inconsistent with the scheme of distribution provided under federal bankruptcy law.    *See In re Chewning & Frey Sec., Inc.*, 328 B.R. 899, 918 (Bankr. N.D. Ga. 2005); *see also In re Chambers*, 500 B.R. 221, 227 (Bankr. N.D. Ga. 2013); *In re Patton*, 358 B.R. 911, 915 (Bankr. S.D. Tex. 2007).

The concern expressed in *Chewning, supra*, however, does not appear to be implicated in this case.    Although Stephens is, in effect, seeking a priority claim, this situation is different from the one presented in *Chewning, supra*, for several reasons.    Unlike special counsel in that case, Stephens did not bring the Superior Court Action on behalf of the bankruptcy estate, and was not employed by the Debtor as in *Patton, supra*.    Further, unlike special counsel in

---

[44] The Trustee contends that, because the IRS is a creditor in this case, he can avoid a transfer within ten (10) years prior to the Petition Date.    *See In re Kipnis*, 555 B.R. 877 (Bankr. S.D. Fla. 2016).    Likewise, the Trustee insists that he would have been able to avoid the Transfer by stepping into the shoes of the IRS and using the six-year reachback period under the Fair Debt Collection Procedures Act in accordance with 11 U.S.C. § 544(b).    *See Alpha Protective Serv., supra*, 531 B.R. 889.    This may be so, but Stephens having already done so, such efforts do not seem necessary in this case.    Further, had it been the Trustee that had undone the Transfer, it is clear, in light of his other requests in this case, that he would be seeking *his* costs for having done so out of the Net Sale Proceeds.

26

*Chewning*, Stephens did not intentionally assume the risk that any potential recovery would be insufficient to satisfy his claim or legal fees based on an administratively insolvent bankruptcy estate.  Stephens' rights in relation to the recovery awarded in the Superior Court Judgment were fixed as of the Petition Date.   That distinguishes this case from the others, where professionals volunteered post-petition to perform legal services on behalf of an estate.  Here, Stephens' attorney obtained an order setting aside the Transfer before the Debtor filed this case.

Based on the present record, Stephens' rights under state law to a recovery of expenses in the context of a meritorious prepetition fraudulent conveyance action should not be disregarded. Avoidance of a fraudulent conveyance is a creditor's remedy sought in equity.  It was the initiative and action of Stephens that brought the Property, and hence the Net Sale Proceeds, into court and permitted the Creditors to contend over it and Synovus to benefit from it.[45]   Based on application of the common-fund doctrine, and to avoid the prospect of unjust enrichment, Synovus should bear the reasonable and necessary legal fees and expenses incurred by Stephens that enabled Synovus' ultimate recovery.  Stephens will be entitled to recover his fees and expenses incurred in obtaining the Superior Court Judgment, to the extent that they are reasonable in light of the circumstances, including the services provided and the amount at issue.[46]

Finally, the Trustee claims entitlement to a surcharge against the Net Sale Proceeds as compensation for the "reasonable, necessary costs and expenses of preserving, or disposing, of

---

[45]  The case of *Key West Rest. & Lounge, Inc. v. Connecticut Indem. Co. (In re Key West Rest. & Lounge, Inc.)*, 54 B.R. 978, 985 (Bankr. N.D. Ill. 1985), cited by Synovus, is distinguishable because here the benefit provided to Synovus is not incidental and Synovus was similarly situated with the other Creditors as to the Transfer.

[46]  There is no basis to grant Stephens' fees based on a "percentage of the fund" analysis ahead of Synovus.

[the Property] to the extent of any benefit to the holder of such claim," which in this case is Synovus.   *See* 11 U.S.C. § 506(c).   The parties herein all agreed to the sale of the Property conducted by the Trustee that generated the Net Sale Proceeds, and it is undisputed that his efforts regarding same benefitted Synovus on its secured claim.   These efforts are detailed in the *Report of Sale* filed by the Trustee on June 27, 2016.   *See* Main Case Docket No. 51; *see also Order* entered on June 16, 2016 (Main Case Docket No. 46)(granting *Trustee's Motion For Authority To (A) Sell Real Property of the Estate Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Disburse Proceeds at Closing* (Main Case Docket No. 32)); and *Order Approving Settlement Agreement* entered on June 16, 2016 (Main Case Docket No. 45)(granting *Motion for Approval of Agreement Between Trustee and Sandra Thome Johnson* (Main Case Docket No. 36)).

The Court agrees that the Trustee may recover an appropriate portion[47] of such fees and costs as an administrative expense, recoverable from the Net Sale Proceeds pursuant to 11 U.S.C. § 506(c).   The Court also agrees that the Trustee may recover the fees and expenses incurred in filing the Complaint.   The distribution of the Net Sale Proceeds would have ultimately required judicial decision or consensual agreement, and the Trustee's efforts in initiating this process conferred a benefit on the secured claimants to that extent.   The Trustee is not, however, entitled to all of his fees and expenses incurred in conducting this litigation.   A substantial discount may be required for fees and expenses related to his argument for one distribution scheme over another, since the Trustee could have simply interpled the Net Sale Proceeds rather than taking a position on their distribution.

---

[47]  The costs were incurred with regard to the sale of the entire Property, while the Net Sale Proceeds represent only one-half of the net proceeds of sale.

*Conclusion*

Synovus is entitled to judgment as a matter of law that it holds a valid, perfected, first-in-priority judgment lien that attaches to the Net Sale Proceeds, subject to the rights of Stephens and the Trustee to recover certain fees and expenses incurred by them that benefitted Synovus as described above.   No voidable preference arises from the entry of the Superior Court Judgment, since once the Transfer was declared void *ab initio* the Transfer is treated as if it did not occur.   Synovus is not entitled to immediate distribution of the Net Sale Proceeds because allowance must be made for certain fees and expenses incurred by Stephens and the Trustee in making the Net Sale Proceeds available.   Once the amount of the recoverable fees and expenses has been determined, the Net Sale Proceeds will be distributed by the Trustee to Synovus, less the fees and expenses allowed to Stephens and to the Trustee.[48]   All other claims as asserted by the parties herein against the Net Sale Proceeds are dismissed with prejudice.

Based on the foregoing discussion, it is

**ORDERED** that Synovus Bank's Renewed Motion for Judgment on the Pleadings be, and the same hereby is, **granted in part and denied in part** as provided herein; and, it is further

**ORDERED** that the Plaintiff's Motion for Partial Summary Judgment be, and the same hereby is, **denied** except as provided herein; and, it is further

**ORDERED** that the United States' Motion for Partial Summary Judgment be, and the same hereby is, **granted** to the extent that its interest in the Net Sale Proceeds is not avoided as a preference; and, it is further

---

[48]  The Trustee states that, contrary to Synovus' insistence, he is not in the Complaint seeking a fifty percent (50%) surcharge, but instead, is seeking to surcharge the Debtor's interest in the Property for reasonable fees and expenses consistent with 11 U.S.C. § 506(c).

**ORDERED** that Defendant J. Richard Stephens' Motion for Summary Judgment be, and the same hereby is, **granted to the extent provided herein and otherwise denied**; it is further

**ORDERED** (i) that Stephens may file in this Adversary Proceeding and serve on the parties herein and the United States Trustee within **twenty-one (21) days** of entry of this Order an application setting forth his reasonable attorney's fees and expenses incurred in the successful prosecution of the Superior Court Action, in compliance with the Guidelines of the United States Trustee, and (ii) that any party herein may file in this Adversary Proceeding and serve on Stephens any objections to the foregoing application within **fourteen (14) days** of the filing of such application.    It is further

**ORDERED** (i) that the Trustee may file in this Adversary Proceeding and serve on the parties herein and the United States Trustee within **twenty-one (21) days** of entry of this Order an application for reasonable attorneys' fees and expenses incurred in connection with the sale of the Property and the filing and prosecution of this Adversary Proceeding.  Such application shall show how same were reasonable, necessary, and provided benefit to secured creditors and are otherwise shall be in compliance with the Guidelines of the United States Trustee, and (ii) any party herein may file in this Adversary Proceeding and serve on the Trustee any objections to such application within **fourteen (14) days** of the filing of such application.    It is further

**ORDERED** that once an amount is approved for the fees and expenses of Stephens and the Trustee, the Net Sale Proceeds shall be distributed by the Trustee as follows: the amounts allowed to the Trustee and Stephens shall be paid first, and the balance of the Net Sale Proceeds shall be paid to Synovus for application to its secured claim.

The Clerk is directed to serve a copy of this Order upon counsel for the Plaintiff-Chapter 7 Trustee, counsel for Synovus, counsel for J. Richard Stephens, counsel for the I.R.S., counsel for all other party defendants herein, and the United States Trustee.

**[END OF DOCUMENT]**